# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

Stephen A. Saccoccia

v

United States of America

Case No. 91-115 (t)

(Honorable William Smith)

## MOTION FOR MODIFICATION OF SENTENCE IN LIGHT OF UNITED STATES V BOOKER, 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005) PURSUANT TO TITLE 18 U.S.C. SECTION 3582(c)(2).

## JURISDICTION

This Court has the authority to modify Petitioner's sentence under 18 U.S.C. § 3582 (c)(2). This Court is not constrained by 18 U.S.C. § 3582(c)(2) reference to the Sentencing Commission's authority under 28 U.S.C. § 994(o), (u). Courts may ascribe retroactive effect to amendments not listed in U.S.S.C. § 1B1.10(c), *U.S. v Crudup*, 375 F. 3d 5, 9 (1st Cir. 2004)(citing *United States v Capers*, 61 F. 3d 1100, 1109 (4th Cir. 1995)(Courts can give retroactive effect to clarifying (as opposed to substantive) amendments regardless of whether it is listed in U.S.S.C. § 1B1.10(c).

## FACTUAL BACKGROUND

On March 12, 1993, following trial on an indictment alleging one count of RICO conspiracy, (18 U.S.C. § 1962(d)), 36 counts of engaging in monetary transactions in criminal derived property (18 U.S.C. § 1957), 13 counts of money laundering, (18 U.S.C. § 1956), and 4 counts of interstate travel in aid of racketeering (18 U.S.C. § 1952), the jury returned a general verdict of guilty against your petitioner.

Counts 38 through 98 and 121 through 133 of the Fourth Redacted Indictment (the substantive counts pursuant to §§ 1956, 1957) alleged a total of $ 9,382,754.00, in laundered funds.

Counts 134 through 141 (the Travel Act violations pursuant to 18 U.S.C. § 1952(a)(3) and (2)) alleged only one monetary amount, ($248,000.00 in count 134).

Count 1, the RICO count, alleged four overt acts, including the purchase of monetary instruments, bank deposits of monetary instruments, wire transfers in the amount of $136,344,231.00, and the receipt of $98,000.00 in currency. The jury was not charged with making any specific findings and returned a general verdict on all counts of the indictment. Any two of the substantive offenses could have been the basis of the jury's conspiracy.

1

## THE SENTENCE

On May 12, 1993, this court utilizing the 1992 Edition of the United States Sentencing Guideline Manual, (USSG), adopted the recommendation of the Probation Department that all counts of conviction be grouped under USSG § 3D1.2(d) and set Petitioner's base offense level at 23, according to USSG § 2S1.1(a)(1).

Utilizing the preponderance of the evidence standard for its findings, this court imposed the following enhancements recommended by the Probation Department: (a) 13 levels pursuant to USSG § 2S1.1(b)(2)(N), finding the amount of money laundered exceeded one hundred million dollars; (b) 3 levels pursuant to USSG § 2S1.1(b)(1), finding the money laundered represented the proceeds of narcotic sales; (c) 4 levels pursuant to USSG § 3B1.1, finding leadership role; (d) 2 levels pursuant to USSG § 3C1.1, finding obstruction of justice. This resulted in a total adjusted offense level of 45.

This court then placed Petitioner in Criminal History Category II, as a result of a prior conviction. Because level 43 or greater requires a life sentence under the guidelines, the court imposed consecutive sentencing pursuant to USSG § 5G1.2(d).

Pursuant to the facts determined by the jury alone and proved at trial, beyond a reasonable doubt, Petitioner's base offense level would have been enhanced by 8 levels to level 31., pursuant to USSG § 2S1.1(b)(2)(I) finding the amount laundered through the substantive counts of conviction at more than $6,000,000.00

Accordingly, Petitioner's guideline sentence range was increased from level 31, carrying a sentence of 121-152 months, to level 45, which resulted in the court imposing a 660 year sentence.

At the sentencing hearing, Petitioner's defense counsel objected to the Probation Department's recommendation to this court that Petitioner be held responsible for $136,344,241.00, resulting from his conviction of the RICO conspiracy count. Counsel objected that the jury's verdict of the RICO count did not constitute a finding of any specific amount of laundered money, that the amount charged in the substantive offenses charged and proven at trial was less then ten million dollars, and that amount, determined by the jury, should be the base for application of the Sentencing Guidelines pursuant to USSG § 2S1.1(b)(2)(I). (See Attachment A, May 10, 1999 TR Page 85 at Line 22 through Page 88).

## PRELIMINARY STATEMENT

Petitioner claims that the remedial holding by the Supreme Court in *United States v Booker*, 543 U.S.220, 125 S. Ct. 738 (2005), in effect, is an amendment to the United States Guidelines, which must be applied retroactively to Petitioner, because the remedial rule in *Booker* simply clarifies the sentencing guideline application of 18 U.S.C. sec 3553(b)(1).

For the reasons set forth below, the Court should modify Petitioner's sentence to a reduced term of imprisonment to time served, consistent with due process, right to jury trial, and protection under the Ex Post Facto Clause to the United States Constitution.

## CLARIFICATION

*Booker* has arguably made its new rule retroactive through its Guidelines clarifying amendments. It is well settled law that guidelines clarifying amendments are retroactive. See, e.g., *United States v Stinson*, 30 F. 3d 121, 122 (11th Cir. 1994) (per curiam) (collecting cases). *Booker* made no substantive changes to the Guildelines. It merely interpreted them (Slip Op. at 25, J. Breyer) ("our remedial interpretation of the Sentencing Act") advisory as "Congress would

have intended" (*Id.* at 2) had it known its mandatory provision violated the Sixth Amendment right to jury trial. See also, *Id.* at 22, ("Hence, we have examined the statute in depth to determine Congress' likely intent in light of today's holding") (emphasis added).

*Booker* merely clarified Congress' intent in light of its Sixth Amendment holding. Had *Booker* "superimpos[ed] its 'Sixth Amendment] constitutional requirement announced [therein]") *Id.* at 3) by 'engraft[ing] the Court's constitutional requirement into the sentencing statutes, [it] would [have substantively] destroy[ed] the system [ ]" *Id.* at 9. Such substantive change would have produced unintended identical punishment for different degrees of similar crimes (*Id.*) and vice-versa (*Id.* at 10) thus destroying Congress' goal of sentencing uniformity (*Id.*). Because the *Booker* Sentencing Reform Act modification did not change the guidelines substantively, but merely interpreted them as advisory instead of mandatory, such modification is only a clarifying modification necessarily retroactive. See, e.g., *Collins v Youngblood*, 497 U.S. 37 (1990) (Justice Stevens concurring).

5

# RETROACTIVITY

By remedially severing and excising parts of the United States Federal

Sentencing Reform Act of 1984, akin to legislating, the Supreme Court in *Booker*

modified the Federal Sentencing Guidelines retroactively to their November 1,

1987, effective date:

> "We answer the question of remedy by finding the
> provision of the federal sentencing statute that makes the
> Guidelines mandatory, 18 U.S.C.A. § 3553 (b)(1) (Supp.
> 2004), incompatible with today's constitutional holding.
> We conclude that this provision must be severed and
> excised, as must one other statutory section § 3742(e)
> (main ed. and Sup. 2004), which depends upon the
> Guidelines' mandatory nature.  So modified, the Federal
> Sentencing Act, see Sentencing Reform Act of 1984, as
> amended, 18 U.S.C. § 3551 et seq. 28 U.S.C. § 991 et
> seq., makes the Guidelines effective advisory."

*Booker*, Justice Breyer (Slip Op. at 2).

Congress' power to declare remedial statutes retroactive absent Ex Post

Facto concerns is unquestionable.  See, *Freeborn v. Smith*, 69 U.S. at 168 ("We do

not question the validity of retrospective statutes that are purely remedial").

Retroactivity thereby is simply a matter of intent.  See, e.g., *Rivers v. Roadway*

*Express*, 511 U.S. 298, 311 (1994) ("The question is whether Congress has

manifested such an intent").  In *Booker,* the Supreme Court remedially modified

The Sentencing Reform Act of 1984 as "Congress would have intended" (Justice Breyer, Slip Op. at 25), had it known in 1984, its mandatory sentencing guidelines violated the Sixth Amendment (*Id.* at 22) ("We have examined the statute in depth to determine Congress' likely intent in light of today's holding") (emphasis in original). *Booker's* indisputable intent to modify the Guidelines retroactively is therefore evident.

Like *Booker*, the Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) interpreted a 123 year old statue differently than appellate courts had done since its enactment. As to *Patterson's* retroactivity, the Court said:

> "A judicial construction of a statute is an authorative statement of what the statute meant before, as well as, after the decision of the case giving rise to that construction[.] Thus *Patterson* provides the authorative interpretation of the phrase 'make and enforce contracts' in the Civil Rights Act of 1866, before the [Congressional] 1991 amendment [overruling *Patterson*] went into effect on November 21, 1991. [*Patterson's*] interpretation provides the base line for our conclusion that the 1991 amendment would be 'retroactive' if applied to cases arising before that date."

*Rivers v. Roadway Express*, 511 U.S. 298, 313 (1994).

Unlike *Rivers*, which rejected retroactivity of the relevant Congressional Amendment because it was not so intended by Congress, the Supreme Court's judicial retroactive interpretation of The Sentencing Reform Act of 1984, is

inescapable because "The Court has no authority to depart from the Congressional command setting the [November 1, 1987] effective date of the law[] it has enacted []" *Rivers, supra.*, at 313, n.12.


## MODIFICATION OF SENTENCE


In order to modify Petitioner's sentence to a term of imprisonment of 12 ½ years, this Court should utilize the standard of proof of beyond a reasonable doubt as mandated by the Due Process Clause of The United States Constitution.

Assuming that the Post-*Booker* remedial decision permits this Court to consider all facts, including uncharged conduct, as well as, dismissed or acquitted conduct, the standard of proof to be applied should be beyond a reasonable doubt.

In *United States v Pimental*, 367 F. Supp. 2d 143 (D.Mass. 2005), the Honorable Nancy Gertner's holding in that case supports Petitioner's argument. Judge Gertner stated "We are in a hybrid regime, neither fish (totally indeterminate) nor fowl (totally mandatory.) Whether the Guidelines are presumptively reasonable, see *Wilson I* and *Wilson II*, carefully considered, see *United States v Jaber*, 362F. Supp. 2d 365 (D. Mass. 2005), or something in between, see *United States v Crosby*, 397 F. 3d 103 (2nd Cir. 2005), they continue to play a critical role. Certain facts, like the amount of loss, continue to assume

inordinate importance in the sentence outcome. So long as they do, they should be tested by our highest stand of proof". *Id.* Slip Opinion at 20-21.

Judge Gertner states "In effect, the impact of the case law on sentencing from *Apprendi* to *Booker* is anomalous. It has added both more flexibility and more formality to sentencing process. The *Booker* remedy decision made the guidelines advisory, i.e. more flexible. But the **principle decision in that case and those that had foreshadowed it, reflected the Court's new concern with the formal procedures for determining facts essential to sentencing**". *Id.* at 21 (emphasis added).

Indeed, even if the Sixth Amendment's jury trial guarantee is not directly implicated because the regime is no longer a mandatory one, the Fifth Amendment's Due Process requirement is. See, e.g., *United States v Nixon*, 418 U.S. 683, 711 (1974)("The Fifth Amendment [] guarantees that no person shall be deprived of liberty without due process of law.... It is a manifest duty of the courts to vindicate those guarantees."). Certain facts are significant, whether or not they play a dispositive role. *United States v Huerta-Rodriguez*, 355 F. Supp. 2d 1019, 1027 (D. Neb. 2005) (finding that "[I] n order to comply with due process in determining a reasonable sentence, this court will require that the defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a

defendant's sentence") *Id.* at 1027 n.8 ("this approach may not be mandated by Booker, but it is not inconsistent with, nor prohibited by *Booker*").

In conclusion, Judge Gertner determined, "We cannot have it both ways: We cannot say that facts found by the judge are only advisory, that as a result, few procedural protections are necessary, and also say, the Guidelines are critically important. If the Guidelines continue to be important, if facts the Guidelines make significant continue to be extremely relevant, than Due Process requires procedural safeguards and a heightened standard of proof, namely, proof beyond a reasonable doubt. *Id.* at 22.

In *Booker*, the Supreme Court held sentencing under the Federal Sentencing Guidelines by judge-determined facts by preponderance of evidence standard violated the Sixth Amendment right to trial by jury. The holding by the Court rested upon *Apprendi v New Jersey*, 530 U.S. 466 (2000) and *In Re Winship*, 397 U.S. at 363-364 (1970) Sixth Amendment right to jury trial with respective beyond a reasonable doubt proof standard as construed in *Blakely v Washington*, 159 L. Ed. 2d 403 (2004).

In the case at bar, your Petitioner exercised his constitutional right to jury trial. He was prosecuted on the Fourth Redacted Indictment. The Indictment did not charge the Specific Offenses Characteristics, nor did the jury find, beyond a reasonable doubt, the enhancements set forth at pages 2- 3 of this motion. Rather,

this court determined said enhancements under the preponderance of evidence standard.

This resulted in an unconstitutional enhancement of Petitioner's base offense level by 14 levels by this court, which translated into an additional sentence of approximately 647 ½ years not authorized by the jury. See, *Booker, supra*, citing *Blakely v Washington*, (internal citations omitted). Premise considered, this Honorable Court should modify Petitioner's sentence to time served.

## DUE PROCESS (EX POST FACTO)

For all offences committed pre-*Booker*, courts may sentence anywhere below, but not above, the top of the guideline range, taking into account, only the jury-found facts or admitted facts of the defendant.

In all cases involving offenses committed before the date that *Booker* was decided (January 12, 2005), the ex-post facto principles inherent in the Due Process Clause should bar courts from imposing a sentence any greater than the "*Blakely-ized*" guideline range – the range as calculated only on the basis of facts proven to the jury beyond a reasonable doubt or admitted by the defendant.

Although the Ex Post Facto Clause of the Constitution, by its terms, applies only to acts by the legislature and not the judiciary, the Supreme Court has made

clear "that limitation on ex post facto judicial decision making are inherent in the notion of due process." *Rogers v Tennessee*, 532 U.SA. 451, 456 (2001). As the *Rogers* Court explained, the Due Process Clause contains the basic principle of "fair warning." *Id.* At 457. "Deprivation of the right to fair warning, … can result from … an unforeseeable and retractive judicial expansion of statutory language that appears narrow and precise on its face." *Id.*, (Citing, *Bouie v City of Columbia*, 378 U.S. 347, 352 (1964). Thus, the Court held that if a judicial construction of a criminal statue is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," [the construction] must not be given retroactive effect. *Rogers*, 532 U.S. at 457 (quoting *Bouie*, 378 U.S. at 354).

These Due Process and Ex Post Facto principles come into play here because the remedial majority in *Booker*, through its new interpretation of The Sentencing Reform Act, effectively raised the statutory maximum penalty that may be imposed for federal crimes. As *Blakely* made clear, the statutory maximum for *Apprendi* purposes, is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, *Blakely supra.* Thus, under the mandatory federal sentencing guideline system that was in effect until *Booker* was decided, the "statutory maximum" sentence is the top of the Guidelines range, as calculated solely on the basis of the facts (other than a

prior conviction) found by the jury beyond a reasonable doubt or admitted by the defendant.

In *Booker*, by judicially striking the provisions that had made the guideline mandatory, effectively raised the statutory maximum from the top of the un-enhanced guidelines range to the maximum allowed under the statute for the offense at issue. This judicial interpretation of The Sentencing Reform Act, which expands the criminal penalty for all federal crimes, cannot be applied retroactively to the detriment of the defendant in cases involving crimes committed before *Booker*.

Like the judicial construction at issue in *Bouie*[1], this construction is "clearly at odds with the statute's plain language and had no support in prior [court] decisions." *Rogers*, 532, U.S. at 458. Specifically, the *Booker* Court's remedial interpretation of 18 U.S.C. § 3553 meets the *Rogers* two-part test for non-retroactivity because it was (1) *unexpected*; no one reading The Sentencing Reform Act could have expected the Court's advisory guidelines construction. Indeed, the

---

[1]In Bouie, supra., a State Supreme Court's expansive construction…of a trespassing statute "violated this principle because it was so clearly at odds with the statute's plain language and had not support in prior [State Court] decisions." Rogers, 532 U.S. at 458".

Supreme Court itself has given the statute exactly the opposite construction in several cases. See, *Stinson v United States*, 508 U.S. 36, 42 (1993) (reaffirming "binding" nature of guidelines and citing prior cases); see also, Justice Stevens' dissent in *Booker* emphasizing the entirely unexpected nature of the Court's remedy, noting, "novelty of this remedial maneuver perhaps explains why no party or amicus curaie to this litigation has request the remedy the Court now orders." (Justice Stevens dissent, slip Op. at 2); and (2) Indefensible by reference to prior law, this point is made clear by the fact that the remedial majority, like the State Supreme Court revered in *Bouie*, could not cite to a single prior decision to support its construction of the statute. As noted above, all the Court's prior cases construing this statute had held that the guidelines were mandatory. Moreover, as Justice Stevens stated in his dissent, nothing in *Booker* even suggests that there is "any constitutional infirmity" inherent in 18 U.S.C. § 3553 (b)(1). Thus, there was nothing in prior law that the Court could rely upon to support its construction/excision of § 3553 (b)(1), and therefore, it was "indefensible" by reference to prior law.

Accordingly, both prongs of the test for non-retroactivity are met, and the *Booker* remedy cannot be applied to the detriment of a defendant who committed the offense before *Booker* was decided. To state the argument in terms of the due process requirement of "notice," before *Booker*, defendants were on notice by

14

virtue of the plain statutory language and the case law that the guidelines were binding, *Booker* unexpectedly struck the binding language, and thereby raised the statutory maximum sentence. Because the sentence imposed must comply with the Sixth Amendment, the guideline range can be based only on facts found by the jury or admitted by the defendant. In other words, defendants whose offenses occurred pre-*Booker* get the benefit of *Booker's* remedy ruling. See, *United States v Marks*, 430 U.S. 188, 196-197, where the Court issues a decision that expands criminal liability in one respect, but limited criminal liability on constitutional grounds in another respect, defendants whose conduct preceded the decision are entitled to have the beneficial aspects of the decision apply, without the retroactive application of the detrimental aspects. *Id.* At 196-197, (holding that Due Process Clause precludes application of standards expanding criminal liability for obscenity under *Miller v California*, 413 U.S. 15 (1973), for offense committed before *Miller* was decided, but that nonetheless, "any constitutional principal enunciated in *Miller* which would serve to benefit petitioners must be applied in their case"). That is, defendants need not choose between their constitutional rights; they are entitled to have both their right to due process and their Sixth Amendment rights respected.

15

## **CONCLUSION**

For the foregoing reasons and in the interest of justice, Petitioner urges this Honorable Court to vacate and modify his sentence.

## CERTIFICATE OF SERVICE

On this  31st  date of  August, 2010, I declare that I served a true copy of the attached pleading to:

The United States Attorney's Office at 50 Kennedy Plaza, Providence, Rhode Island  02903.

Submitted on this 31st  day of  August, 2010:

*Stephen A. Saccoccia*

Stephen A Saccoccia
Reg #02596-070
U.S.P. Big Sandy
U.S. Penitentiary
P.O. Box 2068
Inez, Kentucky  41224