IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )     CR. No. 91-0115T |
| | ) |
| | )     In violation of 18 U.S.C. |
| STEPHEN A. SACCOCCIA | )     §§ 1962(d), 1957, 1956(a)(2) |
| | )     (A) and (B)(i), 1952(a)(3), |
| | )     2, 1963, 982 |
| | ) |
| | )     (4TH REDACTED) |

(FINAL FOR STEPHEN ONLY)

S U P E R S E D I N G   I N D I C T M E N T

COUNT 1

(RICO Conspiracy; 18 U.S.C. § 1962(d))

The Grand Jury charges:

A. **INTRODUCTION**

1.    During the time period covered by this indictment, defendant STEPHEN SACCOCCIA, was the de facto owner and chief executive of Trend Precious Metals, Inc., International Metal Marketing, Inc., Saccoccia Coin Company and Clinton Import/Export, which conducted business at the following locations:

Trend Precious Metals, Inc., 129 C and D Fletcher Avenue, Cranston, Rhode Island, and various offices at 580 5th Avenue, New York, New York;

Saccoccia Coin Company, 1083 Park Avenue, Cranston, Rhode Island;

International Metal Marketing, Inc., 608 South Hill Street, Suite 1114, Los Angeles, California; and

Clinton Import/Export, 707 Wilshire Boulevard, Suite 4390, Los Angeles, California.

2.    During the time period covered by this indictment, defendant STEPHEN SACCOCCIA would conduct the affairs of Trend

Precious Metals at 580 5th Avenue, New York, New York, under the names "Manhattan Coin" and "International Metals Marketing" as well as "Trend Precious Metals."

3.   During the time period covered by this indictment, co-conspirators Alfred M. Gabriele, David Izzi, Richard Gizzarelli, Pat Masino, Howard Messer, Vincent Hurley, Donna Saccoccia, Kenneth Saccoccio, James Saccoccio, Anthony Demarco, Stephen Pizzo, Carlo DeMarco, Stanley Cerilla, were de facto employees of defendant STEPHEN SACCOCCIA and his companies, acting on his instructions and being paid by him and his companies.

4.   During the time period covered by this indictment, Donna Saccoccia was the wife of defendant STEPHEN SACCOCCIA and worked for defendant STEPHEN SACCOCCIA in a supervisory role monitoring the shipment of large volumes of cash in amounts over $10,000 from the offices of Trend Precious Metals and/or Manhattan Coin Company in New York, New York to Trend Precious Metals and Saccoccia Coin Company in Cranston, Rhode Island.   Donna Saccoccia would also supervise the conversion of these large volumes of cash into checks, the deposit of those checks into certain accounts, and the subsequent transfer of the deposited funds to other accounts outside of the state of Rhode Island.

5.   During the time period covered by this indictment, co-conspirator David Izzi worked for defendant STEPHEN SACCOCCIA in a supervisory role receiving instructions from defendant STEPHEN SACCOCCIA and overseeing and participating in the receipt of large volumes of cash in amounts over $10,000 at Trend Precious Metals,

129 C and D Fletcher Avenue, and Saccoccia Coin, 1083 Park Avenue, Cranston, Rhode Island, its conversion into checks, and their deposit into certain accounts.

6.  During the time period covered by this indictment, Vincent Hurley worked for defendant STEPHEN SACCOCCIA in a supervisory role receiving instructions from defendant STEPHEN SACCOCCIA and overseeing and participating in the receipt of large volumes of cash in amounts over $10,000 at Saccoccia Coin Company, 1083 Park Avenue, Cranston, Rhode Island, its conversion into checks, and their deposit into certain accounts. Hurley also supervised the use of some of these large volumes of cash in amounts over $10,000 for the purchase of gold. Some of the gold purchased with this cash was stolen and some of it was sold "off the books" to prevent the Internal Revenue Service from determining the tax consequences of such income.

7.  During the time period covered by this indictment, Anthony DeMarco worked for defendant STEPHEN SACCOCCIA as a money courier transporting large volumes of cash in amounts over $10,000 from New York, New York to Trend Precious Metals and Saccoccia Coin Company in Cranston, Rhode Island.  Anthony DeMarco would also receive cash in Cranston, Rhode Island, and participate in converting it into checks, and depositing them into certain accounts in a manner designed to make it appear that the money belonged to DeMarco.

8.  During the time period covered by this indictment, James and Kenneth Saccoccio worked for defendant STEPHEN SACCOCCIA as money couriers taking large volumes of cash in amounts over $10,000

from Trend Precious Metals and Saccoccia Coin Company in Cranston, Rhode Island, and converting it into checks.

9.   During the time period covered by this indictment, Stephen Pizzo, Stanley Cerilla and Carlo DeMarco worked for defendant STEPHEN SACCOCCIA (Pizzo and Cerilla primarily at Saccoccia Coin Company, 1083 Park Avenue, Cranston, Rhode Island), assisting in the receipt of large volumes of cash at Trend Precious Metals and Saccoccia Coin Company in Cranston, Rhode Island, its counting, and its packaging in preparation for its conversion into checks and their deposit in certain accounts.

10.   During the time period covered by this indictment, Alfred M. Gabriele was the owner and operator of Recovery Technology, Inc. (RTI), 65 Newcomb Street, Attleboro, Massachusetts, a precious metals dealer and refiner. Throughout this time, RTI maintained a gold pool account through which he received, held, and sold gold on behalf of defendant Stephen Saccoccia.  Beginning in the summer of 1991, Gabriele also received and held cash on behalf of defendant Saccoccia.  During this time period, Gabriele maintained Account No. 106920-9 in the name of RTI, Inc. at Citizens Bank in Rhode Island.

11.   From March 19, 1986 to April 2, 1991, defendant STEPHEN SACCOCCIA maintained an account numbered 118-490-3 in the name of Trend Precious Metals at Citizens Bank, Providence, Rhode Island. Defendant STEPHEN SACCOCCIA and Donna Saccoccia had signatory authority over this account and verbally authorized numerous wire transfers from this account.

4

12.   From a date unknown until November 25, 1991, defendant STEPHEN SACCOCCIA maintained an account numbered 007003919 in the name of Manhattan Coin Company at Chemical Bank, New York, New York.   Defendant STEPHEN SACCOCCIA and Donna Saccoccia had signatory authority over this account and verbally authorized numerous wire transfers from this account.

13.   From February 2, 1989 until November 25, 1991, defendant STEPHEN SACCOCCIA maintained an account numbered 03109-03393 in the name of International Metal Marketing at the Bank of America, South Hill Street, Los Angeles, California.   Defendant STEPHEN SACCOCCIA had signatory authority over this account and verbally authorized numerous wire transfers from this account.

14.   From May 12, 1988 until November 25, 1991, there was an account numbered 973-995-5 in the name of International Chain Sales at Citizens Trust Company, Providence, Rhode Island.   Anthony DeMarco had signatory authority over this account, but the account was controlled by defendant STEPHEN SACCOCCIA.

15.   From May 2, 1989 until November 25, 1991, defendant STEPHEN SACCOCCIA maintained an account numbered 208-741-3 in the name of Vogue Precious Metals at Citizens Trust Company, Providence, Rhode Island.   Defendant STEPHEN SACCOCCIA had signatory authority over this account.

16.   From April 13, 1990 until November 25, 1991, there was an account numbered 28113457-12 in the name of Refined Metals at First Bank and Trust, Providence, Rhode Island.   Anthony DeMarco had

5

signatory authority over this account, but the account was controlled by defendant STEPHEN SACCOCCIA.

17.  From April 16, 1990 until November 25, 1991, there was an account numbered 0004150314 in the name of Gold Enterprises Refinery at Rhode Island Hospital Trust National Bank, Providence, Rhode Island.  Anthony DeMarco had signatory authority over this account, but the account was controlled by defendant STEPHEN SACCOCCIA.

## B.  **THE RACKETEERING CONSPIRACY**

During the time period covered by this indictment, Trend Precious Metals, Inc., Saccoccia Coin Company, Manhattan Coin, International Metal Marketing, Inc., Clinton Import/Export, International Chain Sales, Vogue Precious Metals, Refined Metals, Gold Enterprises Refinery, and Recovery Technology, Inc., were a group of entities associated in fact with each other, and as such constituted an "enterprise" as defined in Title 18, United States Code, Section 1961(4).

From a date unknown and continuing through November 19, 1991, in the District of Rhode Island and elsewhere, the defendant, STEPHEN A. SACCOCCIA being a person employed by and associated with the "enterprise" described above, which was engaged in interstate and foreign commerce, did unlawfully, willfully, and knowingly combine, conspire, confederate and agree with Donna Saccoccia, Anthony DeMarco, Alfred M. Gabriele, James Saccoccio, Kenneth Saccoccio, Vincent "Mickey" Hurley, Stanley Cerilla, Stephen Pizzo,

Carlo DeMarco, David Izzi, Richard Gizzarelli, Pat Masino, Howard Messer, Duvan Arboleda, Augusto Arboleda, Barry Slomovitz, Juan Mejia, Mauricio Mejia, Thomas Murphy, and others known and unknown to the Grand Jury to conduct and to participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of Title 18, United States Code, Section 1962(c), which racketeering activity consisted of money laundering in violation of Title 18, United States Code, Sections 1956 and 1957, and the use of travel and facilities in interstate and foreign commerce to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said money laundering offenses, in violation of Title 18, United States Code, Section 1952(a)(3).

It was part of the conspiracy that each defendant agreed to commit two or more acts of racketeering activity in the conduct of the affairs of the enterprise.

### C. **MANNER AND MEANS**

The unlawful combination, conspiracy, confederation, and agreement was to be and was accomplished by the following means and in the following manners.

1.  It was a part of the conspiracy that defendant STEPHEN SACCOCCIA and Donna Saccoccia, and unindicted co-conspirator Richard Gizzarelli, would receive large volumes of cash in amounts exceeding $10,000 at Rooms 606 and 1215 at 580 Fifth Avenue and

Room 706 at 42 West 48th Street, New York, New York, and/or at other locations in Manhattan from couriers.

2.   It was a further part of the conspiracy that defendant STEPHEN SACCOCCIA, Donna Saccoccia, and Richard Gizzarelli would receive instructions, sent via a facsimile machine, concerning the manner in which the cash described in paragraph C.1 should be distributed to bank accounts and other locations.

3.   It was a further part of the conspiracy that defendant STEPHEN SACCOCCIA, Donna Saccoccia, and Richard Gizzarelli would cause these large volumes of cash in amounts exceeding $10,000 to be shipped via Loomis or Brinks armored couriers and by private vehicle to 129 Fletcher Avenue and 1083 Park Avenue, each in Cranston, Rhode Island, and to International Metal Marketing, South Hill Street, Los Angeles, California.  In the years 1990 and 1991, such shipments would typically occur on a daily basis and would contain hundreds of thousands of dollars in currency rubber-banded together in bundles of 10-, 20-, and 50-dollar bills.

4.   It was a further part of the conspiracy that Anthony DeMarco, Vincent Hurley, Kenneth Saccoccio, James Saccoccio, Stanley Cerilla, Stephen Pizzo, Carlo Demarco, and David Izzi would receive these large volumes of cash in amounts over $10,000 at 129 Fletcher Avenue and 1083 Park Avenue, Cranston, Rhode Island, would count such cash on an automatic money counting machine, and would divide such cash in preparation for its transport to various banks.

5.   It was a further part of the conspiracy that the defendants and co-conspirators agreed to and did use code words

when describing the shipment of cash and its conversion to checks to make the discussion appear to concern a precious metals rather than a currency transaction. "Ounces" was used to refer to thousands of dollars, "karat" used to refer to the denomination of the currency, e.g., twenty karat meaning twenty dollar bills, and "high grade" and "low grade" used to refer to high and low denomination currency.

7.   It was a further part of the conspiracy that Anthony DeMarco, Kenneth Saccoccio, James Saccoccio, and David Izzi would transport the divided portions of these large volumes of cash, the portions themselves exceeding $10,000, to various banks, where the defendants and co-conspirators would use the cash to purchase checks payable to Trend Precious Metals, International Chain Sales, Vogue Precious Metals, Refined Metals, Gold Enterprises and other entities.  As set forth in paragraph D.1 of the Overt Acts, between March 1990 and April 2, 1991, the defendants and co-conspirators would purchase more than 1,000 such checks.

8.   It was a further part of the conspiracy that after purchasing these checks, the defendants and co-conspirators would deposit them into accounts held in the names of the respective payees, as described in paragraphs A.11 to A.17, but would later group, collect and recombine these funds in the account of Trend Precious Metals at Citizens Trust.

9.   It was further part of the conspiracy that the defendants and co-conspirators would purchase some checks in amounts in excess of $10,000 and other checks in amounts under $10,000.  In 1990 and

the first 3 months of 1991, the defendants and co-conspirators purchased more than 400 checks in excess of $10,000 having a total value of over $26 million for deposit, directly and indirectly, into the Trend account.

10.  With respect to the transactions referred to in paragraph C.7 involving the purchase of checks for an amount under $10,000, it was a further part of the conspiracy that Anthony DeMarco, Kenneth Saccoccio, James Saccoccio and David Izzi would take a divided portion of the original large volume of cash, the divided portion still exceeding $10,000, to various banks where this cash was further divided and used to conduct transactions--that is, the purchase of two or more checks in amounts under $10,000.  In 1990 and 1991, the defendants and co-conspirators purchased more than 600 such checks having a value of more than $5.5 million.

11.  It was a further part of the conspiracy that in addition to depositing, directly and indirectly, the checks referred to in paragraphs C.7 through C.10 into the account of Trend Precious Metals at Citizens Trust, defendant STEPHEN SACCOCCIA would cause additional funds to be transferred by wire from the account of International Metal Marketing in California to the account of Trend Precious Metals at Citizens Trust.  In 1990 and 1991, more than $53 million was transferred by wire from the International Metal Marketing Account in California to the Trend account at Citizens Trust.

12.  It was a further part of the conspiracy that defendant STEPHEN SACCOCCIA and Donna Saccoccia and others would receive more

than 1,000 blank money orders and travellers checks having a value of approximately $550,000, fill in the names of the purchasers, and cause these instruments to be deposited, directly and indirectly, into the account of Trend Precious Metals.

13.  It was further part of the conspiracy that some of the cash collected in New York and Los Angeles and shipped to Rhode Island would be used at Saccoccia Coin Company for the purchase of gold from local sources. Some of this gold was stolen and some was purchased and sold "off the books" to prevent the Internal Revenue Service from determining the tax consequences of such transactions. These transactions were intended to convert low denomination "street level" drug proceeds into gold and to sell this gold thereby creating records to make it appear that the sources of the funds laundered were legitimate gold transactions.

14.  It was further part of this conspiracy that, at the direction of defendant STEPHEN SACCOCCIA, gold would be delivered to the pool account held by Alfred M. Gabriele at RTI described in paragraph A.10 above. The gold would be held in this pool account until defendant SACCOCCIA gave instructions to sell various quantities thereof. The proceeds were deposited to Account No. 106920-9 in the name of RTI, Inc. at Citizens Trust from where such proceeds would then be transferred to accounts controlled by defendant SACCOCCIA via wire transfer or would be wire transferred to other accounts per defendant SACCOCCIA's instructions.

15.  It was further part of the conspiracy that sometime in or before the fall of 1991, Alfred M. Gabriele began to receive

shipments of cash in amounts over $10,000 at RTI via armored courier from persons or companies controlled by defendant SACCOCCIA in New York and Los Angeles. Gabriele also received shipments of cash in amounts over $10,000 from companies controlled by defendant SACCOCCIA in Rhode Island per defendant Saccoccia's instructions. During this time period, Gabriele and RTI acted as a repository for the cash to be laundered receiving this cash from various locations, holding it at RTI, and distributing it to other co-conspirators in Rhode Island. Gabriele also held funds and gold actually belonging to defendant SACCOCCIA at RTI, at a pool account in the name of RTI at another local gold refiner, and in an account at Citizens Bank in the name of RTI. Gabriele and RTI assumed this cash repository function because it was believed that the previous cash repository at 129 Fletcher Avenue, Cranston, Rhode Island was being scrutinized by law enforcement.

16. It was a further part of the conspiracy that unindicted co-conspirator Barry Slomovitz would also collect sums of currency, including the proceeds of drug trafficking, in New York, New York, and would transmit portions of those sums by wire from an account held in the name of Capitol Refiners in New York to the Trend account at Citizens Trust. In 1990 and 1991, more than $9 million was transferred by wire from Capitol Refiners to the Trend account at Citizens Trust.

17. It was a further part of the conspiracy that after Citizens Trust refused to do further business with defendant STEPHEN SACCOCCIA and closed the Trend Precious Metals account

12

numbered 118-490-3 on April 2, 1991, defendant STEPHEN SACCOCCIA, Anthony DeMarco and David Izzi continued the scheme as before, except that instead of buying checks and depositing them into the Trend account at Citizens Trust, the defendants and co-conspirators would purchase checks in Rhode Island payable to International Metal Marketing, and send these checks via Brinks or Loomis armored couriers to International Metal Marketing in Los Angeles.   Other employees of defendant STEPHEN SACCOCCIA would then take these checks and other funds to various banks in Los Angeles for deposit into the accounts held in the names International Metal Marketing, Clinton Import/Export, and RGE.

18.   It was a further part of the conspiracy that defendant STEPHEN SACCOCCIA and Donna Saccoccia would cause the funds that had been deposited in the account of Trend Precious Metals at Citizens Trust, and the accounts of International Metal Marketing, Clinton Import/Export and RGE in Los Angeles, California, to be transferred by wire to various accounts in Colombia (South America), Switzerland, Florida, New York and elsewhere according to instructions received by facsimile as described in paragraph C.2. Between March 1990 and March, 1991, the defendants and co-conspirators would transfer more than $130 million from the Trend Precious Metals account.   After April 2, 1991, the defendants and co-conspirators would transfer an additional sum in excess of 40 million dollars from the International Metal Marketing, Clinton Import/Export and RGE accounts to many of the same accounts in Colombia and elsewhere.

13

### D.   **OVERT ACTS**

In furtherance of the conspiracy and to achieve the objects thereof, the defendants and their co-conspirators, known and unknown to the grand jury, committed and caused to be committed overt acts in the District of Rhode Island and elsewhere including the following:

1. The transactions listed in Appendix A to this indictment (which is incorporated herein) in which the person listed as the "transactor" purchased a cashiers check, treasurers check or other monetary instrument with cash at the indicated domestic financial institution.

2. The transactions listed in Appendix B to this indictment (which is incorporated herein) in which cashiers checks, treasurers checks, and other monetary instruments were deposited into the account of Trend Precious Metals at Citizens Trust.

3. The transactions listed in Appendix C to this indictment (which is incorporated herein) in which the indicated amounts were transferred by wire from the account of Trend Precious Metals at Citizens Trust to the indicated beneficiary account at another financial institution.

5. On October 28, 1991, Alfred M. Gabriele received a shipment at RTI consisting of two boxes of currency. Together with co-conspirator David Izzi, Gabriele counted this cash which totalled $98,000, the majority of which was then transferred to Saccoccia Coin Company.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNTS 38 TO 98

### (Violations of 18 U.S.C. § 1957)

The Grand Jury further charges:

1. The allegations set forth in ¶¶ A.1 through A.22 of Count 1 of this indictment are repeated and incorporated herein.

2. On or about the dates set forth below, in the District of Rhode Island, the defendant,

### STEPHEN SACCOCCIA

did knowingly engage and attempt to engage in a monetary transaction, affecting interstate commerce, in criminally derived property of a value greater than $10,000, said property having been derived from a specified unlawful activity, to wit: the importation, buying, selling and otherwise dealing in narcotic and other dangerous drugs.

3. In each case the monetary transaction was a transfer of funds from account number 1184903 at Citizens Trust, Cranston, Rhode Island, in the amounts specified below in each Count 38 through 98, to the specified bank accounts in Miami and New York.

15

| Count | Date | Amount | Account No. | Bank | Payee |
|-------|------|--------|-------------|------|-------|
| 38 | 01/12/90 | $44,400 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| 39 | 01/18/90 | $51,000 | 4218329 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| 41 | 02/02/90 | $33,763 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| 42 | 02/13/90 | $92,500 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| 44 | 03/20/90 | $30,000<br>61,392<br>--------<br>$91,392 | 0189003388796<br>32374699 | SUN BANK MIAMI<br>CITIBANK NYC | FERNANDO DUENAS<br>DE CAFERCO LTDA |
| 45 | 03/21/90 | $23,200 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| 46 | 04/10/90 | $58,530 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| 48 | 04/24/90 | $35,000<br>$37,000<br>--------<br>$72,000 | 4247043<br>8691604816 | CITIBANK INTL MIAMI<br>CHASE NYC | CARLOS DUENAS<br>ANGELA GARCIA |
| 49 | 04/26/90 | $85,000<br>125,000<br>--------<br>$210,000 | 0189003388796<br>32374699 | SUN BANK MIAMI<br>CITIBANK NYC | FERNANDO DUENAS<br>DE CAFERCO LTDA |
| 50 | 05/07/90 | $85,000<br>65,000<br>--------<br>$150,000 | 4247043<br>32374699 | CITIBANK INTL MIAMI<br>CITIBANK NYC | CARLOS DUENAS<br>DE CAFERCO LTDA |
| 51 | 05/14/90 | $32,000 | 8691604816 | CHASE NYC | ANGELA GARCIA |
| 52 | 05/25/90 | $49,257<br>90,000<br>--------<br>$139,257 | 4247043<br>32374699 | CITIBANK INTL MIAMI<br>CITIBANK NYC | CARLOS DUENAS<br>DE CAFERCO LTDA |

| | | | | | |
|---|---|---|---|---|---|
| 54 | 06/04/90 | $69,808 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| 55 | 06/07/90 | $83,000 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| | | 57,000 | 32374699 | CITIBANK NYC | DE CAFERCO LTDA |
| | | ------- | | | |
| | | $140,000 | | | |
| 56 | 06/11/90 | $18,142 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| 58 | 06/29/90 | $58,892 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| | | 87,000 | 32374699 | CITIBANK NYC | DE CAFERCO LTDA |
| | | 77,000 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| | | ------- | | | |
| | | $222,892 | | | |
| 59 | 07/03/90 | $71,001 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| 60 | 07/05/90 | $86,455 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| 61 | 07/17/90 | $18,768 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| 63 | 08/16/90 | $55,000 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| 64 | 08/24/90 | $36,497 | 32374699 | CITIBANK NYC | DE CAFERCO LTDA |
| | | 63,000 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| | | ------- | | | |
| | | $99,497 | | | |
| 66 | 08/29/90 | $128,000 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| | | 53,000 | 8691604816 | CHASE NYC | ANGELA GARCIA |
| | | ------- | | | |
| | | $181,000 | | | |
| 67 | 08/30/90 | $204,129 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| 68 | 08/31/90 | $84,293 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| | | 58,000 | 8691604816 | CHASE NYC | ANGELA GARCIA |
| | | 49,594 | 32374699 | CITIBANK NYC | DE CAFERCO LTDA |
| | | ------- | | | |
| | | $191,887 | | | |

| 69 | 09/04/90 | $63,000<br>65,000<br>-------<br>$128,000 | 0189003388796<br>4247043 | SUN BANK MIAMI<br>CITIBANK INTL MIAMI | FERNANDO DUENAS<br>CARLOS DUENAS |
|----|----------|------------|-----------|------------|------------|
| 70 | 09/07/90 | $89,000<br>48,000<br>53,000<br>-------<br>$190,000 | 32374699<br>32374699<br>8691604816 | CITIBANK NYC<br>CITIBANK NYC<br>CHASE NYC | DE CAFERCO LTDA<br>DE CAFERCO LTDA<br>ANGELA GARCIA |
| 71 | 09/11/90 | $86,000 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| 74 | 09/20/90 | $72,566<br>77,000<br>-------<br>$149,566 | 32374699<br>4247043 | CITIBANK NYC<br>CITIBANK INTL MIAMI | DE CAFERCO LTDA<br>CARLOS DUENAS |
| 75 | 09/27/90 | $73,900<br>68,300<br>57,800<br>-------<br>$200,000 | 32374699<br>8691604816<br>4247043 | CITIBANK NYC<br>CHASE NYC<br>CITIBANK INTL MIAMI | DE CAFERCO LTDA<br>ANGELA GARCIA<br>CARLOS DUENAS |
| 77 | 10/02/90 | $70,000<br>$68,300<br>-------<br>$138,300 | 4247043<br>8691604816 | CITIBANK INTL MIAMI<br>CHASE NYC | CARLOS DUENAS<br>ANGELA GARCIA |
| 78 | 10/03/90 | $154,000<br>87,000<br>-------<br>$241,000 | 32374699<br>4247043 | CITIBANK NYC<br>CITIBANK INTL MIAMI | DE CAFERCO LTDA<br>CARLOS DUENAS |
| 79 | 10/05/90 | $97,000<br>$111,000<br>$115,000<br>-------<br>$323,000 | 0189003388796<br>32374699<br>4247043 | SUN BANK MIAMI<br>CITIBANK NYC<br>CITIBANK INTL MIAMI | FERNANDO DUENAS<br>DE CAFERCO LTDA<br>CARLOS DUENAS |

| 30 | 10/11/90 | $61,400 | 4247043 | CITIBANK NYC | CARLOS DUENAS |
| | | $87,600 | 8691604816 | CHASE NYC | ANGELA GARCIA |
| | | 100,000 | EJ557595 | SWISS BANK CORP | ROSARIO ZATTA |
| | | $81,432 | 32374699 | CITIBANK NYC | DE CAFERCO LTDA |
| | | ------- | | | |
| | | $330,432 | | | |

| 31 | 10/16/90 | $72,000 | 8691604816 | CHASE NYC | ANGELA GARCIA |
| | | 81,550 | 32374699 | CITIBANK NYC | DE CAFERCO LTDA |
| | | 47,000 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| | | ------- | | | |
| | | $200,550 | | | |

| 82 | 10/24/90 | $52,000 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| | | 43,000 | 0189003388796 | SUN BANK MIAMI | FERNANDO DUENAS |
| | | 33,000 | 8691604816 | CHASE NYC | ANGELA GARCIA |
| | | 103,658 | 32374699 | CITIBANK NYC | DE CAFERCO LTDA |
| | | ------- | | | |
| | | $231,658 | | | |

| 83 | 11/20/90 | $87,850 | 4247043 | CITIBANK INTL MIAMI | CARLOS DUENAS |
| | | 80,480 | 8691604816 | CHASE NYC | ANGELA GARCIA |
| | | ------- | | | |
| | | $168,330 | | | |

All in violation of Title 18, United States Code, Sections 1957 and 2.

### COUNTS 121 - 133

(Violations of 18 U.S.C. § 1956(a)(2))

The Grand Jury further charges:

1.  The allegations set forth in ¶¶ A.1 through A.22 of Count 1 of this indictment are repeated and incorporated herein.

2.  On or about the dates set forth below, in the District of Rhode Island, the defendant,

STEPHEN SACCOCCIA

did knowingly transport, transmit and transfer and attempt to transport, transmit and transfer funds, to wit: the amounts specified below in each Count 121 through 133, from a place in the United States (that is, account number 1184903 at Citizens Trust, Cranston, Rhode Island), to a place outside of the United States (that is, the bank specified in each Count 121 through 133):

(a) with the intent to promote the carrying on of specified unlawful activity, to wit: the importation, buying, selling and otherwise dealing in narcotic and other dangerous drugs; and

(b) knowing that said funds represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the source, ownership and control of the proceeds of said specified unlawful activity.

| Count | Date | Payee | Amount | Bank |
|---|---|---|---|---|
| 121 | 02/22/90 | MANUFACTURAS JAL | $525,820 | BANCO DE CALDAS |
| 122 | 04/10/90 | MANUFACTURAS JAL | $476,700 | BANCO DE CALDAS |
| 123 | 06/07/90 | MANUFACTURAS JAL | $378,214 | BANCO DE CALDAS |
| 124 | 06/26/90 | MANUFACTURAS JAL | $545,000 | BANCO DE CALDAS |
| 125 | 06/27/90 | MANUFACTURAS CARIBE COSTA | $500,000 | BANCO DE CALDAS |
| 126 | 04/26/90 | ASTRAKAN LTDA Y-O COLUMBIAN BAGS | $383,187 | CAJA DE CREDITO |
| 127 | 04/27/90 | ASTRAKAN LTDA Y-O COLUMBIAN BAGS | $383,099.75 | CAJA DE CREDITO |
| 128 | 08/20/90 | ASTRAKAN | $147,280 | CAJA DE CREDITO |
| 129 | 08/24/90 | COLUMBIAN BAGS | $300,000 | CAJA DE CREDITO |
| 130 | 10/25/90 | ASTRAKAN-CUEROCO | $170,000 | CAJA DE CREDITO |
| 131 | 10/26/90 | ASTRAKAN-CUEROCO | $500,000 | BANCO POPULAR |
| 132 | 10/26/90 | ASTRAKAN-CUEROCO | $210,000 | CAJA DE CREDITO |
| 133 | 10/26/90 | ASTRAKAN-CUEROCO | $120,000 | CAJA DE CREDITO |

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A), (B)(i), and 2.

### COUNTS 134 TO 141

(Travel Act Violations; 18 U.S.C. § 1952(a)(3))

The Grand Jury further charges:

1.  The allegations set forth in ¶¶ A.1 through A.22 of Count 1 of this indictment are repeated and incorporated herein.

2.  On or about the dates set forth below, in the District of Rhode Island and elsewhere, the defendant, as named below in each Count 134 through 141, knowingly travelled in interstate and foreign commerce and used a facility in interstate and foreign

commerce with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit: acts indictable under Title 18, United States Code, Sections 1956 and 1957.

| Count | Defendant | Date | Description |
|-------|-----------|------|-------------|
| 134 | STEPHEN SACCOCCIA | 10/12/90 | Transport of approx. $248,000 from N.Y. to R.I. via Conn. Tpk. |
| 138 | STEPHEN SACCOCCIA | 4/3/91 | Transport of cash from N.Y. to R.I. via Conn. Tpk. |
| 139 | STEPHEN SACCOCCIA | 4/3/91 | Shipment of 2 checks to Los Angeles via Brinks. |
| 140 | STEPHEN SACCOCCIA | 4/4/91 | Shipment of 2 checks to Los Angeles |

All in violation of 18 U.S.C. §§ 1952(a)(3) and 2.

A TRUE BILL:

_____
Foreperson

_____
LINCOLN C. ALMOND
United States Attorney